| | | |
|---|---|---|
| ALEX HOLDEN | * | IN THE |
| 2805 Violet Avenue | | |
| Baltimore, Maryland 21215 | * | UNITED STATES |
| | | |
| Plaintiff | * | DISTRICT COURT |
| v. | | |
| | * | FOR THE DISTRICT |
| OFFICER JASON GIORDANO | | |
| 601 E. Fayette Street | * | OF MARYLAND |
| Baltimore, Maryland 21202 | | |
| Individually and as a police officer for * | | |
| BALTIMORE CITY POLICE DEPT. | | |
| | * | Case No.: |
| AND | | |
| | * | |
| OFFICER JIMMY SHETTERLY | | |
| 601 E. Fayette Street | * | |
| Baltimore, Maryland 21202 | | |
| Individually and as a police officer for * | | |
| BALTIMORE CITY POLICE DEPT. | | |
| | * | |
| AND | | |
| | * | |
| BALTIMORE CITY POLICE DEPT. | | |
| S/O: Michael S. Harrison, Police Comm. | * | |
| 601 E. Fayette Street | | |
| Baltimore, Maryland 21202 | * | |
| | | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

**COMES NOW** Plaintiff Alex Holden (hereinafter "Mr. Holden," "Plaintiff," and "Plaintiff Holden"), by and through his attorney, Esquire, Hannah M. Ernstberger, Esquire, and the law office of Saller, Lord, Ernstberger & Insley, and complaining of the acts of the Defendants alleges and states as follows:

## COMPLAINT AND JURY TRIAL DEMAND

**COMES NOW** Plaintiff Alex Holden (hereinafter "Mr. Holden," "Plaintiff," and "Plaintiff Holden"), by and through his attorney Hannah M. Ernstberger, Esquire, and the law office of Saller,

Lord, Ernstberger & Insley, and complaining of the acts of the Defendants alleges and states as follows:

## INTRODUCTION

In this action, Plaintiff Holden seeks compensatory and punitive damages as well as other relief pursuant to 42 U.S.C. § 1983, 42 U.S.C. §1985, the Fourth Amendment to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law, for the unconstitutional and unlawful conduct of the Defendants. The actions of the Defendants as detailed herein deprived Plaintiff Holden of his civil rights and constitute egregious and objectively unreasonable violation of his rights under the Fourth Amendment to the United States Constitution, Article 24 of the Maryland Constitution and Maryland law. Numerous Defendants participated in Plaintiff Holden being unlawfully stopped, unconstitutionally searched, and illegally arrested after drugs were planted by the Officer Defendants. Defendant Baltimore Police Department was aware of the custom of violating citizens' civil rights and condoned, or otherwise failed to adequately supervise, such actions. In this instance of carrying out the custom, Plaintiff Holden had his civil rights violated when he was illegally stopped, searched, arrested and prosecuted for crimes which he did not commit, but instead were fabricated by the Officer Defendants.

## PARTIES

1. Plaintiff, Alex Holden, is a 31-year-old, African American citizen of the United States residing at 2805 Violet Avenue, Baltimore, Maryland 21215.

2. Defendant Officer Jason Giordano (hereinafter "Officer Giordano," "Defendant Giordano," or collectively with other named officer as "Officer Defendants") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as an officer and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Giordano

2

was on duty and participated in the stop, apprehension, and arrest of Plaintiff Holden. Defendant Giordano is sued in his individual and official capacity under 42 U.S.C. § 1983, 42 U.S.C. §1985, the Fourth Amendment to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

3. Defendant Officer Jimmy Shetterly (hereinafter "Officer Shetterly," "Defendant Shetterly," or collectively with other named officer as "Officer Defendants") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as a police officer and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Shetterly was on duty and participated in the stop, apprehension, and arrest of Plaintiff Holden. Defendant Shetterly is sued in his individual and official capacity under 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Fourth Amendment to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

4. Defendant Baltimore City Police Department (hereinafter "BPD") is an agency of the State of Maryland. The BPD is responsible for providing police and law enforcement services for the City of Baltimore and for investigating crimes that occur within the City. The BPD has its principal offices at 242 West 29th Street, Baltimore, Maryland 21211-2908. Upon information and belief, the BPD reposed decision-making authority regarding police officer training and supervision. The BPD is a local agency for the purposes of the Local Government Tort Claims Act.

5. Though it has long been noted by the courts that Defendant BPD is customarily a state agency rather than an agency of a county or municipality, and therefore enjoys the protection of sovereign immunity, this Court has determined that Defendant BPD is a suable entity under 42 U.S.C. § 1983. *Hector v. Weglein*, 558 F. Supp. 194, 197-99 (D. Md. 1982), *see also Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 547-48 (D. Md. 2003). The Court ruled Defendant BPD is "so

3

connected with the government of Baltimore City to such an extent as to prevent the Police Department from asserting an Eleventh Amendment immunity." *Chin* at 548.

6. Regarding Plaintiff's state claims, Defendant BPD is sued pursuant to 42 U.S. § 1983, § 1985, and § 1988, as individual Defendants were acting under color of state law and subjected Plaintiff to deprivation of his civil rights under the United States Constitution.

7. Defendant BPD conspired with the Officer Defendants to encourage, tolerate, ratify, and be deliberately indifferent to the following patterns, practices, and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

   a. The improper exercise of police powers, including but not limited to the unreasonable unlawful arrest, planting evidence, and violations of citizens' Constitutional rights, particularly in connection with unlawful search and seizure, and racially motivated acts by its police officers;

   b. The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

   c. The failure to identify and take remedial or disciplinary action against police officers who were subject of prior or internal complaints of misconduct;

   d. Police Officers' use of their status as police officers to employ the use of excessive force and unlawful arrest, unlawful search and seizure, or to achieve ends not reasonably related to their police duties; and

   e. The failure of police officers to follow established policies, procedures, directives and instructions regarding he arrest, detention, pursuit, search and seizure, duty to rescue and prevent unnecessary bodily harm, use of force and arrest powers under such circumstances as presented herein.

4

8. Prior to November 27, 2015, Defendant BPD had actual or constructive knowledge that Defendants Shetterly, Giordano, and other police officers of Defendant BPD were engaged in conduct that posed pervasive and unreasonable risk of constitutional injury to residents and citizens within the jurisdiction of the City of Baltimore but failed to take appropriate and adequate remedial action against these police officers to prevent the injuries suffered by the Plaintiff. Defendant BPD implemented a policy and custom of condonation or deliberate indifference to police misconduct, had a custom or policy of failing to train its officers adequately, and failed to adequately supervise Defendants Shetterly and Giordano.

9. Defendant BPD's directives and failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiff's injuries.

10. At all times the actions and practices of the Defendants named herein and those acting at their direction, were performed under the color of state law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

11. The above and all other allegations herein are incorporated by reference as if fully set forth.

12. This case presents an actual case and controversy arising under the Fourth Amendment to the United States Constitution and asserts claims for relief 42 U.S. § 1983, and § 1985, as well as claims for relief under Article 24 of the Maryland Constitution, and Maryland State Law.

13. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and § 1343. This Court also has supplemental jurisdiction over the state law claims against the individual Defendants pursuant to 28 U.S.C. § 1367.

14. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) inasmuch as Plaintiff's causes of action arose in the District of Maryland, and at all times relevant to this action all the Defendants were found in this District.

15. The notice requirements of the Local Government Tort Claims Act does not apply to Plaintiff's case pursuant to Md. Code, Cts. & Jud. Proc. § 5-304(e)(2), as the Baltimore City Solicitor had actual or constructive notice of the defects and circumstances giving rise to the Plaintiff's injuries.

## FACTUAL ALLEGATIONS

16. The above and all other allegations herein are incorporated by reference as if fully set forth.

17. At all times relevant, Defendants Shetterly and Giordano, were employed as officers of Defendant Baltimore City Police Department.

18. At all times during the course of these events, Defendant BPD had advance notice that members of its force engaged in illegal acts while in the course of their employment. This notice included, but was not limited to, officers planting evidence, stealing of money from citizens, and using excessive force.

19. Defendants BPD implemented a policy or custom of condonation or deliberate indifference to the use of planted evidence, illegal search and seizures, and misuse of police powers by Defendant BPD officers.

20. Defendant BPD failed to adequately supervise Defendant BPD's officers in proper arrest, search and seizure, and use of police powers.

21. Each of these factual allegations are supported by the incidents detailed below, which articulate BPD's failure to supervise its officers even in the face of obvious issues, and the complaint set forth herein.

### Gary Brown Incident

22. On June 8, 2009, at the intersection of West Lafayette Street and North Eutaw Street in Baltimore, Maryland, Officers Jamel Rayam and Jason Giordano of Defendant BPD were on patrol in plain clothes as part of the Northern District Drug Unit.

23. The two officers see another officer they believed to be Office Michael Sylvester engaged in a traffic stop in plain clothes. Officers Rayam and Giordano verify Officer Sylvester's identity and assist in the stop.

24. The driver, Mr. Gary Brown, and his passenger were removed and handcuffed.

25. In the course of the stop, over $11,000 in cash was stolen from the vehicle. The money was traced to the legitimate refinance of a house with a "cash out" of equity.

26. On June 11, 2009, Gary Brown made a formal complaint for the theft. Mr. Brown detailed that all three officers discussed the money with him and threatened him with unlawful police actions, i.e. executing fraudulent search warrants on his house.

27. On August 27, 2009, complainant Gary Brown took and passed a polygraph examination regarding his interaction with the officers on June 8, 2009, including the stolen money.

28. On that same day Officer Sylvester cashed a "negotiable instrument" at M&T Bank in the amount of $10,842.00. The same day he deposited $6,000.00, all in $100 bills, into an account at Destinations Federal Credit Union.

29. On September 8, 2009, a copy of the case file was given to Assistant State's Attorney Doug Ludwig of Baltimore City State's Attorney's Office's Police Integrity Unit. Included were the polygraph results.

30. Despite the fact that the investigation by Defendant BPD was still ongoing and the officers were not yet cleared of any wrongdoing, on June 14, 2010, Baltimore City State's Attorney's

Office's Doug Ludwig sent a letter to Internal Affairs stating Baltimore City State's Attorney's Office would not be pursuing charges against the officers involved in the theft.

31. On July 14, 2010, Officers Rayam and Giordano were ordered to take a polygraph test. The test showed a greater than 99% chance that they were being deceptive about the on-duty armed robbery of Mr. Gary Brown. (Exhibit 1).

32. Despite the polygraph failures, Officers Rayam and Giordano were permitted to continue policing the streets of Baltimore.

### Gary Clayton Case

33. On May 4, 2015, Baltimore City State's Attorney's Office filed an indictment in case number 115124016 against Gary Clayton. The case was brought by the Gun Trace Task Force.

34. On November 12, 2015, Mr. Clayton's counsel. Ms. Staci L. Pipkin, filed a Motion for Franks Hearing, challenging the veracity of the affidavit in support of a search warrant that was applied for, and subsequently issued to the Gun Trace Task Force. (Exhibit 2)

35. The attached affidavit in support of the Motion for Franks Hearing alleged that Officer Jenkins needlessly pulled his gun and put it in Kimberly Demory's face when she asked Officer Jenkins for credentials and subsequently denied her the asthma inhaler when she began having an attack from the stress of the encounter. In addition, Ms. Demory contended that one of the members was wearing an ATF shirt, impersonating a Federal Agent.

36. The Franks Hearing occurred on November 12, 2015, in front of the Honorable Barry G. Williams. The Office of the State's Attorney for Baltimore City was represented by Assistant State's Attorney Kent Grasso. Judge Williams found Officer Jemel Rayam's testimony to be not credible in relation to numerous factual allegations he made. Judge Williams granted Ms. Pipkin's Motion and the warrant was deemed invalid based on numerous factual misrepresentations by Gun Trace Task Force member Officer Jemel Rayam.

37.     Baltimore City State's Attorney's Office entered Nolle Prosequi to the indictment on the same day.

38.     On January 12, 2016, Baltimore City State's Attorney's Office's Kent Grasso sent a memo to Stacy Ann Lewellyn, Chief of the Police Integrity Unit of Baltimore City State's Attorney's Office, Cynthia Banks, and MiaBeth Marosy detailing the troubling events of the Franks Hearing. (Exhibit 3)

39.     On January 21, 2016, StacyAnn Llewellyn sent a "Memo of Referral" to Defendant Warfield, the Head of Defendant BPD Internal Affairs Division outlining the concerns the Office had with Gun Trace Task Force member Rayam. (Exhibit 4) The memo states that Baltimore City State's Attorney's Office would be making disclosures to defendants and their counsel about Gun Trace Task Force Member Jemel Rayam in cases "where Jemel Rayam is an essential witness."

40.     Despite the concerns raised by the Baltimore City State's Attorney's Office, Officer Jenkins was permitted to continue policing the streets of Baltimore.

## Rakeem Douglas Case

41.     On November 7, 2016, Baltimore City State's Attorney's Office brought Rakeem Douglas to trial in case number 816281001. The case originated in District Court under Case number 0B02334234. All police involved were members of the Baltimore Police Department, including Jemel Rayam, Maurice Ward, and Wayne Jenkins. Baltimore City State's Attorney's Office dropped Jemel Rayam from their witness list when the case was sent from District Court to Circuit Court for a jury trial.

42.     Rakeem Douglas was represented by long term member of the Baltimore City defense bar, Mr. Lawrence Rosenberg.  Mr. Rosenberg remembered the 2009 disclosure that previous State's Attorney's Administrations had disclosed.  When he asked for it in his matter with

Mr. Douglas, he was informed that the State did not deem Jemel Rayam as an "essential witness" so they would not be calling him, thus the disclosure was immaterial.

43. Despite this glaring omission made by the Baltimore City State's Attorney's Office, which would have been made known to Baltimore Police Department, Defendant BPD took no corrective actions.

## Kendall English Case

44. On July 24, 2015, Kendell English was charged in the District Court under case number 6B02303755 for illegal firearms possession and related counts. He was indicted on August 20, 2015, under case number 115230019.

45. On September 26, 2016, Mr. English, by and through counsel, Karyn Merriweather, filed a Motion to Disclose the Confidential Informant cited by the Gun Trace Task Force, in their Application for a Search and Seizure warrant in the case. (Exhibit 5)

46. On October 18, 2016, Baltimore City State's Attorney's Office filed an objection to defense's motion to disclose the CI that Jemel Rayam and the Gun Trace Task Force alleged gave them information used as the basis of the warrant. (Exhibit 6)

47. On December 9, 2016, Judge Lawrence P. Fletcher-Hill denied the defense motion. (Exhibit 7)

48. On September 26, 2016, Defense counsel Karyn Merriweather filed a motion to compel discovery in the form of a request that the Internal Affairs Division file of Gun Trace Task Force Member Jemel Rayam be disclosed. Despite this being eight months after ASA StaciAnn Llewellyn's memo to Defendant Warfield, Baltimore City State's Attorney's Office not only had not been giving the disclosure to defendants, they were actively fighting them in court.

49. At the hearing Defense Counsel proffered to the court that another lawyer had received a disclosure about Jemel Rayam that had bearing on his credibility. Due to the non-

disclosure agreements defense attorneys are required to sign before they view police personnel records, the attorney could not provide specifics.

50. Nevertheless, Ms. Merriweather persisted by offering the entire transcript of Jemel Rayam's testimony in the Franks Hearing from Gary Clayton's case.

51. Baltimore City State's Attorney's Office objected to the disclosure.

52. The Honorable Jeannie Hong of the Circuit Court for Baltimore City ruled in the State's favor. Stating specifically in her order, "There is no indication that Defendant BPD conducted an Internal Affairs of Officer Rayam concerning his testimony in the case." Once again this was eight months after ASA StaciAnn Llewellyn sent her memo to Defendant Warfield of the Internal Affairs Division. (Exhibit 4)

53. Again, Ms. Merriweather persisted and she filed a Motion for a Franks Hearing challenging the veracity of the Gun Trace Task Force, specifically Jemell Rayam, in the affidavit in support of the search warrant used in the case.

54. Baltimore City State's Attorney's Office objected to the disclosure.

55. One of the allegations in the subsequent indictment of the Gun Trace Task Force in the United States District Court is that they routinely falsified affidavits for search warrants.

## United States Department of Justice Investigation into Baltimore City Police Department

56. On or about August 10, 2016, the United States Department of Justice announced in a 163 page report the outcome of the Department's investigation of Defendant BPD. (Exhibit 8)

57. The Department of Justice concluded that "there is reasonable cause to believe that BPD engages in a pattern or practice of conduct that violates the Constitution or federal law. BPD engages in a pattern or practice of:

a. Making unconstitutional stops, searches, and arrest;

11

b.      Using enforcement strategies that produce severe and unjustified disparities in the rates of stops, searches and arrests of African Americans'

c.      Using excessive force; and

d.      Retaliating against people engaging in constitutionally-protected expression." (Exhibit 8, pg. 3)

58.     In regard to discrimination against African Americans, the report specifically found that "racial disparities in BPD's arrests are most pronounced for highly discretionary offenses: African Americans accounted for 91 percent of the 1,800 people charged solely with "failure to obey" or "trespassing"; 89 percent of the 1,350 charges for making a false statement to an officer; and 84 percent of the 6,500 people arrested for "disorderly conduct."" (Exhibit 8, pg. 7)

59.     In regard to BPD's training of its officers, the report specifically found that "BPD's inadequate policies and training contribute to the Department's pattern or practice of constitutional violations." (Exhibit 8, pg. 129).

60.     Additionally, in regard BPD's supervision of its officers, the report states "Serious deficiencies in BPD's supervision of its enforcement activities, including through data collection and analysis, contribute to the Department's failure to identify and correct unconstitutional policing." (Exhibit 7, pg. 134). Specifically, "[r]elated to BPD's failure to supervise its officers and collect data on their activities, the Department lacks an adequate early intervention system, or EIS, to identify officers based on patterns in their enforcement activities, complaints, and other criteria." (Exhibit 8, pg. 135).

61.     Finally, the report made a number of findings regarding BPD's failure to hold officers accountable for misconduct, noting "BPD relies on deficient accountability systems that fail to curb unconstitutional policing." (Exhibit 8, pg. 139).

62. Specifically, the report noted that Defendant BPD "fails to engage in effective community policing," instead it is "overly focused on narcotics enforcement, gun recovery, and 'clearing corners.'" (Exhibit 8, pg. 156)

### Federal Criminal Proceedings Against the Gun Trace Task Force

63. In March 2017, the United States' Attorney's Office located in Baltimore, Maryland announced its indictment of seven of Defendant BPD's officers, including Defendant Hersl.

64. Subsequently, a number of the officers pleaded guilty, and others were found guilty at trial in front of this Court.

65. On or about July 21, 2017, Evodio Hendrix and Maurice Ward pleaded guilty to racketeering conspiracy. Both officers were subsequently sentenced to seven years in prison each.

66. On or about August 30, 2017, Sergeant Thomas Allers, former officer in charge of other indicted BPD members, was arrested on racketeering charges.

67. On or about October 9, 2017, Jemell Rayam plead guilty to a number of charges.

68. On or about October 11, 2017, Momodu Gondo plead guilty.

69. On or about December 6, 2017, Thomas Allers pleaded guilty to racketeering conspiracy. Thomas Allers was subsequently sentenced to 15 years in prison.

70. On or about January 5, 2018, Wayne Jenkins pleaded guilty to racketeering conspiracy, racketeering, robbery, destruction, alteration, of falsification of records in a federal investigation, and deprivation of rights under color of law. Officer Jenkins was subsequently sentenced to 25 years in prison.

71. On February 5, 2018, Detective Momodu Gondo testified as a government witness in the case *U.S. v. Daniel Hersl and Marcus Taylor*, Case No. CCB-17-106. From Detective Gondo's testimony during cross-examination, it was established that (then) officers Momodu Gondo, Jemell

Rayam, Defendant Giordano and Michael Woodland worked together in the Northwest District and, on more than one occasion, would steal money from alleged suspects.

72. Momodu Gondo also testified that Defendant Giordano partook in a scheme to coverup the illegal police killing of Shawn Cannady in 2009. Under the direction of Deputy Police Commissioner Dean Palmere, Gondo, Defendant Giordano, Jemell Rayam and others fabricated a story to imply Mr. Cannady attempted to run over Defendant Giordano, which resulted in Detective Jemell Rayam shooting and killing Mr. Cannady.

73. On or about February 12, 2018, Marcus Taylor and Daniel Hersl were found guilty on two counts of racketeering conspiracy, racketeering aiding and abetting, racketeering and robbery. Marcus Taylor and Daniel Hersl were each subsequently sentenced to 18 years in prison.

74. Prior to the March 2017 indictments, Plaintiff, along with the general public, was not aware of the pattern and practice of systemic rights violations being committed by the indicted officers, or their concealment thereof. Plaintiff was also unaware of Defendant BPD's ongoing concealment of such actions and Defendant BPD's continued failure to train, supervise, and discipline.

## PLAINTIFF'S CASE

75. On or about May 3, 2012, Plaintiff was conversing with other individuals in the area of 3500 Cottage Avenue, in City of Baltimore, State of Maryland.

76. As Plaintiff was conversing, Defendants Shetterly and Giordano, who were in plain clothes, approached Plaintiff in an unmarked vehicle.

77. Unaware of what was occurring, and fearing for his life, Plaintiff fled on foot.

78. Following a chase, Defendants caught up to Plaintiff and proceeded to unreasonably and forcefully handcuff Plaintiff.

79. Defendants detained, seized, and arrested Plaintiff without an arrest warrant, without a search warrant, without exigent circumstances, without reasonable suspicion, without consent, and without probable cause to believe that Plaintiff was committing or had committed a crime.

80. Officer Defendants then unlawfully and unconstitutionally conducted a pat down of Plaintiff and transported him to the Northwestern Baltimore Police station, then to Central Booking.

81. During the illegal search and arrest of Mr. Holden, one or more of Officer Defendants fabricated evidence, namely cocaine, to justify their unconstitutional actions.

82. Defendants Officers claimed to have witnessed Mr. Holden throw a "white piece of plastic" to the ground during the foot chase, which they claimed to have recovered after the chase and determined it to contain 'suspected cocaine.' (*See* Exhibit 9, Statement of Probable Cause).

83. At the time of his arrest, Plaintiff was without sufficient factual basis to determine whether Officer Defendants had merely found narcotics which they misattributed to him or whether the Officer Defendants engaged in the manufacturing of evidence.

84. Mr. Holden was subsequently charged with violating Maryland Annotated Criminal Code Section 5-602 (Distributing, possessing with intent to distribute, or dispending controlled dangerous substance). Mr. Holden was held in state custody while he awaited trial.

85. On January 29, 2013, Mr. Holden entered a plea of guilty to count one of case number 112152011, for which he received a four-year sentence. (*See* Exhibit 10, State's Motion to Vacate Judgment).

86. Mr. Holden served his sentence.

87. On October 11, 2019, the State's Attorney for Baltimore City filed a Motion to Vacate Judgment in the Case Number 112152011, seeking to vacate Plaintiff's criminal conviction. (*See* Exhibit 10).

88. The Motion was granted by the Circuit Court for Baltimore City and a verdict of nolle prosequi was entered.

## COUNT I
### (Malicious Prosecution in Violation of the Fourth Amendment Pursuant to 42 U.S.C. §1983, 1985– All Defendants)

89. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

90. Plaintiff hereby alleges that the institution and continuation of criminal proceedings by way of case number 112152011 was without probable cause.

91. Officer Defendants initiated a criminal proceeding against Plaintiff after having manufactured evidence, and without probable cause.

92. The prosecution was instituted with malice or purpose other than to bring the defendant of those cases to justice. The other purposes include financial gain, recognition, and masking police misconduct.

93. Officer Defendants knew the alleged evidence was fabricated as they each actively engaged in fabricating the evidence or were aware of the fabrication and failed to take action against the fabrication.

94. Despite a lack of probable cause, Officer Defendants pursued a conviction in said criminal proceeding by swearing out false charges and signing false statements of probable cause. The providing of false information was malicious, willful, and intentional and was for purposes other than to bring the defendant of those cases to justice.

95. The proceedings terminated in Plaintiff's favor after the State's Attorney for Baltimore City's Motion to Vacate Judgment was granted and a verdict of nolle prosequi was entered.

96. As a result of the Officer Defendants' actions, Plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceedings.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT II
### (Violation of Maryland Declaration of Rights – Officer Defendants)

97. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

98. At all times relevant to this Complaint, Defendant Giordano and Officer Shetterly were acting under the color of state law as an Officer employed by Defendant BPD.

99. Plaintiff submits these claims against the Defendants under Article 24 of the Maryland Declaration of Rights.

100. Plaintiff incorporates all allegations, including those in the aforementioned claim of malicious prosecution     , under this claim, and reiterated that Plaintiff has contended violations of Article 24 throughout this Complaint.

101. Plaintiff further states that the allegations alleged were within the scope of Defendant's employment and were conducted with actual malice as to overcome any limited immunity afforded the Defendant under Article 24.

102. Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 24 of the Maryland Declaration of Rights.

17

103. This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT II
### (Failure to Supervise Pursuant to 42 U.S.C. §1983, 1985– Defendant BPD)

104. The above and all other paragraphs herein are incorporated by reference as if fully set forth.

105. Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant BPD is prohibited from allowing its officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

106. At all relevant times, Defendant BPD, directly and through its employees, agents, and deputies, had an obligation to ensure that its employees, agents, and deputies exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the supervision of all employees, agents, and deputies under its direction and control.

107. Upon information and belief, the supervision provided and/or required by Defendant BPD regarding proper arrest procedures and use of police powers was inadequate, insufficient, or nonexistent, and Defendant BPD, directly and through its employees, agents and deputies, failed to exercise the above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

108. As alleged herein, Officer Defendants, and other officers of its force, and thereby, Defendant BPD have engaged in a pattern, practice, policy, or custom of allowing BPD officers to misuse police powers in connection with apprehending and/or arresting individuals and in so doing

18

have failed to properly supervise Defendant BPD officers in the proper arrest procedures and use of police powers.

109. It was readily foreseeable and highly predictable that failing to properly supervise Defendant BPD's officers in the proper arrest procedures and use of police powers would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein and Defendant BPD was indifferent to same.

110. As alleged herein, the actions by all named Defendants were unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant BPD's failure to adequately supervise its officers.

111. As a direct and proximate result of Defendant BPD's failure to adequately supervise its officers and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer damages.

112. Defendant BPD's failure to properly supervise its officers and employees was tantamount to deliberate indifference.

113. Defendant BPD's failure to adequately supervise further confirms the aforementioned pattern and practice.

114. As alleged herein, Defendant BPD has engaged in a pattern, practice, policy, or custom of allowing Defendant BPD's officers to fabricate evidence, conduct illegal arrests, searches, and seizures, and improperly use police powers.

115. Defendant BPD was aware, and should have foreseen, that Defendant BPD's officers would confront situations as that presented by Plaintiff.

116. Upon information and belief, situations involving illegal conduct similar to that which resulted in the deprivation of Plaintiff's constitutional rights and the injuries detailed herein,

have previously been experienced by Defendant BPD and have been similarly mishandled by Defendant BPD as alleged herein.

117. Defendant BPD's improper handling of incidents of planted evidence, illegal arrest and improper use of police powers committed by Defendant BPD's officers such as those detailed herein will frequently, and did in the instant case, result in the deprivation of individual constitutional rights as alleged herein.

118. As a direct and proximate result of Defendant BPD's deliberate indifference to the supervision of its officers and employees as herein detailed, Plaintiff has been injured, and continues to suffer injury.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues of fact in this case.

Respectfully Submitted,

/s/ Hannah M. Ernstberger
Hannah M. Ernstberger, #20516
Saller, Lord, Ernstberger & Insley
12 S. Calvert Street, 2nd Floor
Baltimore, MD 21202
(410) 783-7945